**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| John Margarella, )<br>)<br>    *Plaintiff*, )<br>) | Case No. 18 CV 50031 |
| v. )<br>) | Magistrate Judge Lisa A. Jensen |
| Timothy Chamberlain and )<br>Betsy Dominguez, )<br>)<br>)<br>    *Defendants*. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, John Margarella, brought this action under 42 U.S.C. § 1983, alleging that Defendants Chamberlain and Dominguez, the two medical doctors who provided him with healthcare while he was incarcerated at Dixon Correctional Center ("Dixon"), were deliberately indifferent to his serious medical needs. Defendants asserted the affirmative defense of failure to exhaust administrative remedies. On November 5, 2020, this Court conducted an evidentiary hearing on this affirmative defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Both parties consented to the jurisdiction of the U.S. Magistrate Judge for purposes of the *Pavey* hearing.

## **I. BACKGROUND**

Plaintiff, while an inmate at Dixon, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Timothy Chamberlain, Betsy Dominguez, and Wexford Health Sources, Inc. Dkt. 1. After the court recruited counsel, Plaintiff filed an amended complaint naming Defendants Chamberlain and Dominguez.[1]

The Court has distilled the allegations of the amended complaint into five claims. First, Plaintiff alleges Defendants failed to diagnose his cardiovascular disease and prevent the first heart attack on May 5, 2016.[2] Second, Plaintiff alleges Defendant Chamberlain failed to administer a stress test ordered by the KSB physician following the first heart attack.[3] Third, Plaintiff alleges Defendant Chamberlain failed to inform Plaintiff of the dangers of taking Naproxen and Plavix together.[4] Fourth, Plaintiff alleges Defendants failed to prevent and diagnose the second heart

---

[1] The amended complaint also named Wexford Health Sources, Inc. However, the Court dismissed Wexford on March 11, 2020. Dkt. 95.
[2] This is set forth in paragraphs 9, 10, 11, and 13 of Plaintiff's amended complaint.
[3] This is set forth in paragraph 15 of Plaintiff's amended complaint.
[4] This is set forth in paragraphs 16-20 and 22 of Plaintiff's amended complaint.

1

attack on December 14, 2016.[5] Lastly, Plaintiff alleges Defendants failed to follow the KSB cardiologist's instructions for post-surgery medical care following the second heart attack.[6] Plaintiff alleges that as a result of this conduct he sustained two heart attacks, multiple surgical procedures, a blood transfusion, chronic severe pain and suffering, dizziness, distress of mind, and an increased risk of heart attacks in the future. Plaintiff's Amended Complaint, Dkt. 28 at 4. Defendants answered the amended complaint and asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. 1997e(a). Dkts. 52, 53. On November 5, 2020, the Court held a *Pavey* hearing on the exhaustion issue. *See Pavey*, 544 F.3d at 742.

The parties presented three grievances into evidence at the *Pavey* hearing. The first grievance was submitted on May 10, 2016 (hereinafter "the First Grievance"). Plaintiff complained that following his first heart attack his cardiologist's order to provide him with a heart healthy diet was not being followed. On June 20, 2016, the counselor responded that this issue was outside the jurisdiction of the facility. The grievance officer received the appeal on July 14, 2016. The Grievance Officer's Report, dated October 12, 2016, stated that the officer was reasonably satisfied Inmate Margarella's dietary grievance had been addressed and recommended that the grievance be denied. The Chief Administrative Officer concurred. Plaintiff appealed the response on December 13, 2016. The Administrative Review Board ("ARB") received the appeal on December 15, 2016 and, on January 13, 2017, denied the grievance as untimely.

The second grievance was submitted on July 16, 2016 (hereinafter "the Second Grievance"). The Second Grievance contained over a page of information, giving a thorough background of Plaintiff's appointments and conversations with medical staff as well as symptoms he was experiencing between May 18, 2016 and July 15, 2016. He wrote that his condition had progressively worsened and that "Dixon had systematically avoided seeking the proper medical assistance" for him for two months. Plaintiff's requested relief was immediate access to proper medical treatment in the form of specialists. On August 5, 2016, the counselor responded that the grievance was moot because Plaintiff had been seen multiple times by the Medical Director, had been seen by the cardiologist, and was placed in the infirmary for health issues. The grievance officer received the appeal on August 18, 2016. The Grievance Officer's Report, dated December 20, 2016, stated that the officer was "reasonably satisfied Inmate Margarella has access to medical care and continuous care." The Chief Administrative Officer concurred. Plaintiff appealed the response on January 3, 2017. The ARB office received the appeal on January 6, 2017. On May 4, 2017, they denied the grievance on the basis that the issue was appropriately addressed by the facility administration and stated that Plaintiff was seen routinely and by specialists and was scheduled for a six-month follow-up.

The third grievance was submitted on December 18, 2016 (hereinafter "the Third Grievance"). Plaintiff complained that the drug facts currently being provided by Wexford medical were not reasonably sufficient to prevent injury and that as a result he had suffered stomach ulcerations requiring emergency blood transfusions and cardiac damage due to the interaction of two medications. Plaintiff's requested relief was to have the complete drug facts on all prescriptions provided to inmates. On January 24, 2017, the counselor responded that the grievance

---

[5] This is set forth in paragraph 21 of Plaintiff's amended complaint.
[6] This is set forth in paragraphs 23 and 24 of Plaintiff's amended complaint.

was moot because the information was to be supplied by Plaintiff's provider, that he needed to ask the provider for that information at his next appointment, that he could look up the information in the library, and that Wexford Pharmacy cross-references the interaction of all medications they prescribe. The grievance officer received the appeal on February 7, 2017. The report, dated March 13, 2017, stated that the officer was "reasonably satisfied Inmate Margarella's [sic] has access to Health Care and recommends no further action." The Chief Administrative Officer concurred. Plaintiff appealed the response on March 21, 2017. The ARB received the appeal on March 27, 2017. ARB chairman Sherry Benton denied the grievance on July 3, 2017, writing: "No dates or incidents provided or w/in 60 days of grievance. at Dixon since 2015."

Plaintiff was the first witness Defendant called at the *Pavey* hearing. He testified that he was "vaguely aware" of the process associated with filing grievances while at Dixon. He had not been given a copy of Rule 504 during his time at Dixon. He had, however, been given an orientation manual which included a short paragraph about the grievance process.

Plaintiff kept a logbook regarding his medical conditions beginning around April 2016 through the end of the year because he wanted to keep track of dates and interactions with medical staff. Plaintiff explained that he had memory issues, especially with respect to time, and suffers from petit mal seizures due to a previous accident in which he suffered severe brain trauma. Additionally, he testified Defendants Chamberlin and Dominquez were the only two treating doctors at Dixon from the time he arrived through the time period at issue in the amended aomplaint.

When asked about the First Grievance, Plaintiff admitted that this grievance does not refer to care and treatment he received on May 5, 2016. He also admitted that he initiated an appeal of this grievance after the 60-day time limit to appeal. Plaintiff explained that his delay in appealing the grievance was partially attributed to his medical condition causing memory impairment.

Regarding the Second Grievance, Plaintiff admitted that this grievance did not explicitly refer to May 5, 2016, the date of his first heart attack. When asked if he had completed a grievance form complaining of care or treatment he received on May 5, 2016, Plaintiff responded that he referenced it in his Third Grievance. With respect to that Third Grievance, Plaintiff testified that he completed this grievance after finding out about the interaction of the two drugs he had been taking that caused his second heart attack. When asked when he learned about the drug interaction, Plaintiff testified that he learned of it when he was at KSB Hospital. He testified that he wrote this grievance as soon as practical, either the day he got back to Dixon or the following day. When questioned about whether he included specific dates in his grievance, Plaintiff testified that the grievance did not contain dates, but that it was "an ongoing situation."

Defendants also called Sherry Benton, an ARB chairman, to testify at the hearing. With regard to the grievance procedure that inmates are required to follow, Ms. Benton testified that offenders have 60 days from the date of an incident to provide information to facility staff and, if the offender exceeds 60 days, they must provide a reason for the delay. Inmates must also provide information relating to who was involved, where and when the incident occurred, and what happened. Ms. Benton testified that she could "only assume" Plaintiff was familiar with the grievance process since he had filed grievances. However, she stated she had not seen a CHAMP

entry in Plaintiff's file or other records, which would confirm that he had received an inmate orientation manual that included the grievance rules.

Ms. Benton was asked to review the First and Second Grievances. With respect to the First Grievance, she testified that Plaintiff had failed to meet the 30-day timeframe to appeal and, therefore, had failed to comply with Rule 504. In discussing the Second Grievance, Ms. Benton testified that the offender was required to write "basic information" on his grievance for the staff to review.

Ms. Benton testified that she was involved in making the ultimate determination on the Third Grievance. When asked to read her comments on the form, she testified that she had written: "No dates or incidents provided or w/in 60 days of grievance. at Dixon since 2015." She testified that her determination was that Plaintiff had failed to provide any dates for the incidents he referenced. When asked which section of the grievance rules Plaintiff had violated with regard to the Third Grievance, she stated: "The 60 days to file and that he has to present specific information including dates, times, places, staff."

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means the inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The PLRA does not, however, set forth the procedures an inmate must take to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

State law determines the administrative remedies that a state prisoner is required to exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing *King v. McCarthy*, 781 F.3d 889, 894 (7th Cir. 2016). The grievance procedures are set forth in Ill. Admin. Code tit. 20, § 504.800, *et seq*. The procedures were amended April 1, 2017. *See* 2017 IL REG TEXT 429108 (NS) (showing

both pre- and post-April 1, 2017 versions). Because all three of Plaintiff's grievances were filed prior to April 1, 2017, it is the pre-April 1, 2017 version that applies.

According to the applicable grievance procedures, an inmate first must attempt to informally resolve the grievance with a counselor. Ill. Admin. Code tit. 20, § 504.810 (2016). Then, if the issue remained unresolved, the inmate must file a written grievance with a grievance officer. *Id*. The grievance must be filed within 60 days of the incident giving rise to the complaint and it must contain factual details regarding the inmate's complaint. *Id*. If an inmate does not know the name of an individual involved, he must include as much descriptive information about the individual as possible. *Id*. The grievance officer then makes findings and recommendations to the Chief Administrative Officer, who then issues a decision. § 504.830. If dissatisfied with the Chief Administrative Officer's response, the inmate may appeal to the ARB, and the appeal must be received within 30 days of the decision. § 504.850(a).

### III. DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies because all three grievances are "defective," as they either do not specifically reference Defendants' conduct as alleged in the amended complaint and/or were not timely. Defendants' Brief, Dkt. 119 at 3.

At the outset it must be determined which, if any, of the three grievances submitted at the hearing are at issue here. "The exhaustion requirement is claim specific. That is, the original grievance must have 'alerted the prison to the nature of the wrong for which redress is sought' in federal court." *Boyd, v. Pfister, et al.*, 2020 WL 6381367, at *7 (N.D. Ill. Oct. 30, 2020) (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)). As the Court in *Boyd* explained, "Complaining to the prison about one thing – and the court about another – doesn't serve that function." *Boyd* at *7.

As set forth above, Plaintiff makes the following five factual allegations in his amended complaint: (1) Defendants failed to diagnose his cardiovascular disease and prevent the first heart attack on May 5, 2016; (2) Defendant Chamberlain failed to provide Plaintiff with a stress test that was ordered by the KSB physician following the first heart attack; (3) Defendant Chamberlain failed to inform Plaintiff of the dangers of taking Naproxen and Plavix together; (4) On December 14, 2016 Defendant Chamberlain failed to perform proper tests to diagnose a second heart attack; and (5) Defendant Chamberlain failed to follow the KSB cardiologists' instructions for post-surgery medical care following the second heart attack.

**The First Grievance**

The First Grievance addressed Plaintiff's failure to receive a heart healthy diet. However, the amended complaint does not allege a failure to provide a heart healthy diet. As set forth above, the amended complaint alleges specific failures with respect to the provision of medical care. Nothing in the First Grievance puts the prison on notice that Plaintiff is grieving specific deficiencies in medical care he was provided. Thus, because the First Grievance does not address any of the issues raised in the amended complaint it is not relevant to the issue of exhaustion presented here. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("[A] grievance suffices if

5

it alerts the prison to the nature of the wrong for which redress is sought."); *Boyd,* 2020 WL 6381367, at *7.[7]

**The Second Grievance**

The Second Grievance was submitted on July 16, 2016. It addressed alleged deficiencies in medical care beginning on May 18, 2016. Defendants argue that nothing in this grievance put the prison on notice that Plaintiff was grieving the medical care he received on or before May 5, 2016 (the date of Plaintiff's first heart attack). The Court agrees. Because Plaintiff's Second Grievance addresses medical care after May 18, 2016 it is not relevant to his allegations in the amended complaint that Defendants were deliberately indifferent in failing to diagnose and/or appropriately respond to his symptoms on May 5, 2016. Plaintiff failed to exhaust his administrative remedies regarding his pre-May 18, 2016 medical care.

With regard to medical care between May 18, 2016 and July 16, 2016, the amended complaint alleges only that Dr. Chamberlain failed to provide Plaintiff with a stress test that was ordered by physicians at KSB. However, nothing in the Second Grievance references an order by KSB for a stress test or complains of a failure to provide such stress test. The Second Grievance references various symptoms that Plaintiff was having following his first heart attack and his requests to follow up with the University of Illinois hospital ("U.I.C."). However, the Second Grievance indicates that Plaintiff was taken to U.I.C. on July 14, 2016 and an angiogram was performed there on July 15, 2016. A fair reading of the Second Grievance would not put the prison on notice that Plaintiff was requesting a stress test. The remaining allegations in the amended complaint deal with care on and after December 14, 2016 and are not addressed in the Second Grievance. In sum, the Second Grievance does not address any of the allegations made in the amended complaint and thus, like the First Grievance, is not relevant to any of the issues presented here. *See Strong*, 297 F.3d at 650.

**The Third Grievance**

The Third Grievance alleged an ongoing issue regarding Defendants' failure to provide Plaintiff with pertinent information regarding the dangerous interaction between two of his medications. Accordingly, this grievance corresponds with the third claim the Court identified in Plaintiff's amended complaint: the failure to inform Plaintiff of the dangers of taking Naproxen and Plavix together.

Defendants argue that this grievance does not specify dates and times, does not refer to Defendants by name, and does not include the names of the medications. Defendants' Brief, Dkt. 119 at 4. Defendants also allege that the grievance was untimely as it was filed more than 60 days after the medications were first prescribed.

With respect to the timeliness issue, the Court finds that the continuing violation doctrine applies to this grievance. The Seventh Circuit has recognized that a continuing violation exists where there is a "practice that brings with it a fresh violation each day." *Savory v. Lyons*, 469 F.3d

---

[7] Because the First Grievance does not address any issue raised in the amended complaint this Court need not address whether Plaintiff timely appealed the grievance.

667, 672-73 (7th Cir. 2006) (citations omitted). Moreover, the continuing violation doctrine applies when a plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events. *Id*. at 672. Numerous courts in this circuit have found that a plaintiff raising a continuous violation "reaches back" to the beginning of the wrong even if it lies outside of the statute of limitation period. *See, e.g., Nieto v. Dittman*, 2017 WL 3610571, at *2 (W.D. Wis. Aug. 22, 2017) (plaintiff's grievance about ongoing denial of dental care was a continuing violation); *Thompson v. Illinois Dep't of Corr.*, 2016 WL 11269974, at *5 (S.D. Ill. Dec. 29, 2016) (plaintiff's 2014 grievance exhausted his claim dating back to 2013 about his placement in a cell with unconstitutional living conditions); *Ramirez v. Fahim*, 2013 WL 12181943, at *3 (S.D. Ill. Dec. 20, 2013) (concluding plaintiff could have begun the grievance process at any time that the denial of medical care was ongoing); *Wojtaszek v. Litherland*, 2010 WL 7633990, at *5-6 (S.D. Ill. Sept. 1, 2010) (finding that plaintiff's grievance was sufficient to encompass all events regarding the denial of dental treatment); *Gaines v. Corizon Health*, 2017 WL 2797720, at *5 (S.D. Ind. June 28, 2017) (plaintiff's grievance regarding one instance of being barred from buying personal hygiene items sufficed to exhaust federal claim covering numerous similar occurrences within a three-year period).

It is true that Plaintiff did not specify the dates that he was prescribed the two medications. However, Plaintiff testified that he did not provide dates because the issue was "ongoing." On the grievance form, he wrote in the present continuous tense about "[t]he drug facts *currently being provided* by Wexford medical." (emphasis added). Moreover, the administrative code starts the clock only when a plaintiff "discovered" his medical issues. 20 Ill. Admin. Code § 504.810(a). Although the two medications at issue were prescribed in April and May 2016 respectively, Plaintiff did not learn of the adverse drug interaction until December 16, 2016, when the KSB doctor informed him that the interaction between these two prescriptions caused or contributed to his second heart attack. Plaintiff then submitted a grievance on December 18, 2016. Plaintiff could not reasonably have been expected to know of the alleged violation within the normal 60-day timeframe because the violation only became apparent after being treated by the KSB doctor. As a result, the Court finds that Defendants are unable to prove a failure to exhaust based on the timeliness issue.

With respect to Defendants' contention that Plaintiff did not provide specific details, the Court concludes that these potential procedural shortcomings are not fatal. The Seventh Circuit has held that the purpose of a prisoner's grievance is to provide "prison officials a fair opportunity to address his complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Grievances are not meant to provide notice to officials who might later be sued, but to alert the prison to a problem. *See id.* (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007));*see also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.")

The Seventh Circuit in *Maddox* found that the plaintiff had properly exhausted his administrative remedies despite not naming the defendants because the prison did not reject the grievance as procedurally deficient. 655 F.3d at 721-22. Further, the individuals responsible could be determined from the subject matter of the grievance itself. *Id*. at 722. Additionally, the grievance form did not request that the prisoner provide the names of the personnel involved. *Id*. As a result,

7

the failure to name the defendants was a "mere technical defect that had no effect on the [grievance] process." *Id*. Many courts in this circuit have followed the Seventh Circuit's logic in determining that a lack of identifying information is not dispositive of the exhaustion issue. *See Span v. Chavez*, 2018 WL 6046144, at *4 (N.D. Ill. Nov. 19, 2018); *Kyles v. Beaugard*, 2017 WL 4122708, at *8 (N.D. Ill. Sept. 18, 2017); *Dixon v. Brown*, 2019 WL 1397394, at *5 (S.D. Ill. Mar. 28, 2019); *Hall v. Maue*, 2014 WL 722399, at *3 (S.D. Ill. Feb. 25, 2014); *Harris v. Allen*, 2012 WL 2884789 (S.D. Ill. July 13, 2012).

The Court acknowledges that the present case is distinguishable from *Maddox* because both the grievance procedures in effect and the grievance form itself required Plaintiff to provide identifying information about the officials involved. The Court finds, however, that Plaintiff's grievance sufficiently provided identifying information. The grievance refers to "the drug facts currently being provided by *Wexford Medical*." (emphasis added). Plaintiff testified that the only two Wexford doctors working at Dixon during the relevant time period were Defendants Chamberlain and Dominguez, and Defendants failed to bring forth any evidence contradicting this assertion. As such, this Court finds that the Third Grievance was sufficient to exhaust Plaintiff's administrative remedies regarding the allegations in the amended complaint that Defendant Chamberlain failed to inform Plaintiff of the adverse effects of Plavix and Naproxen. The remaining allegations are dismissed without prejudice for failure to exhaust. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has satisfied the exhaustion requirement with respect to his claims that Defendant Chamberlain failed to inform him of the dangerous interaction between Naproxen and Plavix, which failure resulted in injuries to the Plaintiff. All of the remaining allegations in the amended complaint are dismissed without prejudice for failure to exhaust administrative remedies.

Date: December 4, 2020    By: _Lisa A. [signature]_
Lisa A. Jensen
United States Magistrate Judge

8