IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John Margarella, | |
| Plaintiff, | |
| v. | |
| Timothy Chamberlain, *et. al.*, | Case No. 3:18-cv-50031 |
| Defendants. | Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, John Margarella,[1] brings this action under 42 U.S.C. § 1983, alleging, in part, that Defendant Timothy Chamberlain, M.D. was deliberately indifferent to his serious medical needs by failing to inform Plaintiff of the dangers of taking a combination of drugs used to treat Plaintiff's back pain and cardiac injury.[2] *See* First Amended Complaint, Dkt. 28, at ¶¶ 16–20, 22 ("Compl."); Dkt. 124, at 5–6, 8. Defendant moves for summary judgment, arguing that Plaintiff cannot establish deliberate indifference to a serious medical need and that Plaintiff cannot not recover punitive damages for his claim. Dkts. 168–69. The undisputed facts show that there is no genuine dispute of material fact that Defendant was not deliberately indifferent

---

[1] Throughout this action, Plaintiff has been represented by recruited counsel, Gary Zhao. The Court thanks Mr. Zhao for his time and efforts representing Plaintiff in this case. His efforts are greatly appreciated.
[2] On December 4, 2020, the Court dismissed Plaintiff's other allegations without prejudice for failure to exhaust administrative remedies. Dkt. 124, at 8.

1

to Plaintiff's serious medical needs. Thus, Defendant's motion for summary judgment [168] is granted. Having granted Defendant's motion for summary judgment, the Court need not determine whether punitive damages are available.

## BACKGROUND

Before setting out the background facts, first a word about their origin. "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). "Factual allegations not properly supported by citation to the record are nullities." *Bolden v. Dart*, No. 11 C 8661, 2013 U.S. Dist. LEXIS 102397, at *5 (N.D. Ill. Jul. 23, 2013) (internal quotations and citation omitted).

The party opposing summary judgment must "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2).

To dispute a fact, the party opposing summary judgment must, in its response, "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *See* LR 56.1(e)(3). The opposing party's response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). To assert new facts, the opposing party must file its own statement of facts. LR 56.1(b)(3). Facts

2

not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005).

If it is not already apparent, the consequence of failing to comply with Local Rule 56.1 is dire: "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *See* LR 56.1(e)(3). The Court is entitled to expect strict compliance. *See Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 733 (7th Cir. 2005*); Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

Plaintiff did not file his own statement of facts. Instead, Plaintiff only responds to Defendant's. Dkt. 175. In Plaintiff's response, Plaintiff denies certain statements based on Defendant's deposition by arguing that the statements are "Defendant Chamberlain's own testimony, not undisputed fact." *See, e.g.*, *id.*, at ¶¶ 54, 60; *see also id.*, at ¶ 37 (posing a similar response). Plaintiff does not cite to any controverting material. *See id.* Of course, deposition testimony is proper evidence to rely on for summary judgment. Fed. R. Civ. P. 56(c)(1)(A). Having failed to controvert Defendant's statements, these statements are admitted. *See* LR 56.1(e)(3).

Plaintiff also argues that statements based on Dr. William Woods' testimony concerning relevant standards of care are "opinion, not undisputed fact." *See, e.g.*, Dkt. 175, at ¶¶ 51–53, 55–57. Plaintiff casts Dr. Woods' opinions as improper legal conclusions and argues that they are not to be considered on summary judgment. *See* Dkt. 176, at 8–9.

3

The Court disagrees. Of course, a witness—even an opinion witness—cannot say whether a party was "deliberately indifferent." *Williams v. Mary Diane Schwarz, P.A.*, No. 15 C 1691, 2018 WL 2463391, at *8 (N.D. Ill. June 1, 2018). But that restriction does not stop a qualified witness from offering "opinions couched in terms of the underlying requirements necessary for the jury to find deliberate indifference." *Id.* at *9. It follows that a qualified witness may "opine" as to whether a defendant's "treatment met the standard of care." *Id.* Thus, Dr. William Woods' opinions as to whether Defendant's conduct met the standard of care are appropriate. *Id.* Plaintiff's response fails to include any citation, or even an allusion, to testimony rebutting Dr. Woods' opinions on the standard of care. *See* Dkt. 175, at ¶¶ 51–53, 55–57. So, the Court treats these statements as admitted. *See* LR 56.1(e)(3).

With Local Rule 56.1 in mind, the Court now turns to the facts regarding the merits. Plaintiff was an inmate incarcerated at the Dixon Correctional Center from December 15, 2015, through June 23, 2020. Dkt. 175, at ¶ 1. Defendant was a "physician employee" of Wexford Health Sources, Inc., and "served as the Medical Director at Dixon from July 31, 2015[,] to May 12, 2017." *Id.* at ¶ 2.

During Plaintiff's incarceration, a physician other than Defendant prescribed, and Plaintiff took, naproxen, a non-steroidal anti-inflammatory drug, to treat his chronic back pain. *Id.* at ¶¶ 13, 15, 19, 40, 47. After later suffering a cardiac injury and having stents placed, a physician other than Defendant prescribed, and Plaintiff

took, Plavix and aspirin.[3] *Id.* at ¶¶ 32–35, 48. Stents cause blood clots, and Plavix is used to prevent the clots from clogging the stents. *Id.* at ¶ 37. Defendant's limited role with respect to the prescriptions is allegedly placing the prescription order for Plavix. *See* supra at 5 n.3.

Plaintiff began taking the naproxen, Plavix, and aspirin together in May 2016. *See* Dkt. 175, at ¶¶ 19, 31, 32. Some seven months later, in December 2016, Plaintiff began presenting gastrointestinal ("GI") complaints, including complaints of black, tarry stool. *Id.* at ¶¶ 71–72.

Naproxen, Plavix, or aspirin "by themselves can cause or increase the risk of GI bleeding." *Id.* at ¶ 54. A combination of the three drugs "increases the risk a little bit more" than any of the drugs individually, "but the risk is still quite small." *Id.* And, as Defendant explains, even with this risk, "the benefits of taking aspirin and Plavix after a stent far outweighs the risk of a GI bleed." *Id.* What's more, GI bleeding could have been caused by something other than naproxen, Plavix, aspirin, or the

---

[3] Defendant asserts that he did not prescribe Plavix. *Id.* at ¶ 48. Plaintiff denies Defendant's assertion and states, without citation, that "Defendant Chamberlain issued a prescription order of Plavix to Plaintiff on May 7, 2016." *Id.* Such a response is improper and will not be considered. *See* LR 56.1(e)(2)– (3). But even if it were considered, Defendant explains in his deposition that, "for him to get the medicine at Dixon, since it's a new medicine and he hasn't been on it before, we have to order it for him to continue the cardiologist's wishes regarding the medication." Dkt. 172-2, at 44–45. Thus, prescribing a drug and ordering a drug are two separate and distinct acts, and the latter does not controvert the former. The Court notes that documents that "influence or underpin a judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2014). The deposition testimony of Defendant is no longer under seal. Dkt. 172-2.

combination: "GI bleeding occurs commonly in individuals who take no medication." *Id.* at ¶ 76.

Dr. William Woods, a board-certified cardiologist with a "subspecialty of interventional cardiology," explains that "it was appropriate to prescribe" the three drugs "together under the specific medical circumstances that Plaintiff was experiencing" and doing so "did not fall below the standard of care." *Id.* at ¶¶ 12, 53 (internal brackets removed). Indeed, "[i]t would be contrary to accepted medical practices, and below the standard of care, to have discontinued Plaintiff's prescriptions for Plavix and/or aspirin, as such medical decisions would have put Plaintiff at a significantly increased risk for adverse cardiac events." *Id.* at ¶ 56. Also, "[g]iven the absence of GI symptoms at the time, not only was it medically appropriate and within the standard of care for Plaintiff to remain on naproxen," it would have been "unreasonable and below the standard of care to completely ignore his pain complaints and not prescribe naproxen." *Id.* at ¶ 57.

With respect to the standard of care concerning the reaction of the drugs, Dr. Woods explains that "the standard of care does not require physicians to determine the potential adverse drug reactions and to inform the patient of those potential interactions *when they are not the prescribing physician*." *Id.* at ¶ 51 (emphasis added). He goes on to explain that "[b]ecause [Defendant] was not the prescribing physician" for any of the drugs, "he was not the physician responsible for discontinuing those medications or explaining the potential adverse drug-on-drug interactions that may occur." *Id.* at ¶ 52.

6

Defendant seeks summary judgment, arguing that the undisputed evidence establishes that the Defendant was not deliberately indifferent to Plaintiff's serious medical needs by failing to warn Plaintiff of the alleged "dangerous interaction" between naproxen and Plavix and allowing Plaintiff to continue taking naproxen and Plavix. *See id.* at ¶ 7. All other claims were previously dismissed. *See* Dkt. 124.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The burden to show that no genuine dispute of material fact exists falls on the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beardsall*, 953 F.3d at 972. If the movant meets this burden, to survive summary judgment the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

## ANALYSIS

Plaintiff alleges one constitutional claim under 42 U.S.C § 1983: a claim that Defendant denied Plaintiff adequate medical care in violation of the Eighth and Fourteenth Amendments. Compl., Dkt. 28, at ¶ 29; *see* supra at 1 n.2.

7

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners" amounting to "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To maintain a "deliberate indifference" claim arising from allegedly inadequate medical care, a plaintiff must show that he suffered an objectively serious medical condition, and that the defendant was deliberately indifferent to that condition. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019).

There is no dispute that Plaintiff suffered an objectively serious medical condition. The only question is whether Defendant was deliberately indifferent to it by allegedly failing to inform Plaintiff of the "dangerous interaction" between naproxen and Plavix and allowing Plaintiff to continue taking them. *See* Dkt. 175, at ¶ 7.; *Lockett*, 937 F.3d at 1023.

A "deliberate indifference" inquiry looks into a defendant's "subjective state of mind." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff must show that the defendant official had "subjective knowledge" of a "substantial risk" to the plaintiff's health, and that the official disregarded that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "Evidence that the official acted negligently is insufficient to prove deliberate indifference." *Id.* Deliberate indifference stands higher on the pole of culpability, and "is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id.*

8

"Rarely if ever" will a defendant say, "I knew this would probably harm you, and I did it anyway!" *Petties*, 836 F.3d at 728. Recognizing that smoking-guns are uncommon in deliberate indifference cases, the Seventh Circuit provides that deliberate indifference may be "inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Gayton*, 593 F.3d at 622–23 (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)). "If this standard is not met, the deliberate indifference question *may not* go to the jury." *Id.* (emphasis added).

Here, as a non-prescribing physician, the undisputed standard of care did not require Defendant to "determine the potential adverse drug reactions" or to inform Plaintiff of the "potential interactions" of the drugs. Dkt. 175, at ¶ 51. As a non-prescribing physician, Defendant was also not responsible for "discontinuing those medications or explaining the adverse drug-on-drug interactions that may occur." *Id.* at ¶ 52

Even if he were the prescribing physician, it was "appropriate" to prescribe the combination of drugs "under the specific medical circumstances that Plaintiff was experiencing," and doing so "did not fall below the standard of care." *Id.* at ¶ 53. There is no dispute that it was medically appropriate to allow Plaintiff to take naproxen, Plavix, and aspirin. *Id.* at ¶¶ 56, 57. It would be "contrary to accepted medical practices, and below the standard of care, to have discontinued Plaintiff's

9

prescriptions for Plavix and/or aspirin," because doing so would have "significantly increased" Plaintiff's "risk for adverse cardiac events." *Id.* at ¶ 56. And "[g]iven the absence of GI symptoms at the time, not only was it medically appropriate and within the standard of care for Plaintiff to remain on naproxen," it would have been "unreasonable and below the standard of care to completely ignore his pain complaints and not prescribe naproxen." *Id.* at ¶ 57.

As the Court noted earlier, the consequences of failing to controvert the Rule 56.1 statements of a party moving for summary judgment can be dire. Because Plaintiff failed to show a genuine dispute of material fact as to whether Defendant was deliberately indifferent to Plaintiff's medical needs, Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gayton*, 593 F.3d at 622–23 (quoting *Estate of Cole by Pardue*, 94 F.3d at 261–62).

## CONCLUSION

For the reasons given, Defendant's motion for summary judgment [168] is granted. All claims against all parties having been resolved, this civil case is terminated.

Date: October 19, 2022

Honorable Iain D. Johnston
United States District Judge

10